**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GUEST TEK INTERACTIVE ENTERTAINMENT LTD., <br><br>      Plaintiff, <br><br>    v. <br><br> EXCEPTIONAL INNOVATION, INC., <br><br>      Defendant. | CASE NO.  2:17-CV-00963-ALM-CMV <br><br> JUDGE ALGENON L. MARBLEY <br><br> MAGISTRATE JUDGE CHELSEY M. VASCURA <br><br> JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Guest Tek Interactive Entertainment Ltd. ("Guest Tek" or "Plaintiff"), for its First Amended Complaint against Defendant Exceptional Innovation, Inc. ("Defendant"), alleges as follows:

**Nature of the Action**

1.  This is an action for infringement of United States Patent Nos. 9,137,281 ("the 281 Patent") and 9,781,172 ("the 172 Patent") (collectively, "the Patents-in-Suit") under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

**The Parties**

2.  Guest Tek is a corporation organized and existing under the laws of the province of Alberta, Canada with a place of business at Suite 600, 777 8 Ave., SW, Calgary, Alberta, T2P 3R5, Canada.

3.  Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 480 Olde Worthington Road, Suite 350, Westerville, Ohio, 43082.

**Jurisdiction and Venue**

4.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.  This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has jurisdiction over Defendant as it is incorporated under the laws of the State of Ohio.

6.      Venue is proper in this judicial district under 28 U.S.C. §1400(b).

**Background**

7.      On  September 15, 2015, the 281 Patent, titled "Dynamically Enabling Guest Device Supporting Network-Based Media Sharing Protocol To Share Media Content Over Local Area Computer Network Of Lodging Establishment With Subset Of In-Room Media Devices Connected Thereto," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to inventors Peter S. Warrick, Brendan G. Cassidy, Lindsey M. Carriere and Michael D. McCarthy.  A true and correct copy of the 281 Patent is attached to this Complaint as Exhibit A.

8.      On October 3, 2017, the 172 Patent, titled "Media Proxy That Transparently Proxies Network-Based Media Sharing Protocol Between Guest Device And An Associated One Of A Plurality Of Media Devices," was duly and legally issued by the USPTO to inventors Peter S. Warrick, Brendan G. Cassidy, Lindsey M. Carriere and Michael D. McCarthy.  A true and correct copy of the 172 Patent is attached to this Complaint as Exhibit B.

9.      Guest Tek is the owner, by assignment registered in the USPTO, of the entire right, title, and interest in the Patents-in-Suit.

10.     Guest Tek is a global leader in broadband technology and interactive solutions for the
hospitality industry.  Among Guest Tek's products are its OneView Internet and
OneView Media solutions that allow hotels to offer internet and media services to their
guests ("OneView Products").

11.     The OneView Products are covered by at least one claim of each of the Patents-in-Suit.
Guest Tek has complied with the marking requirements of 35 U.S.C. § 287.

12.     Guest Tek has incurred significant costs in connection with the research, development,
and marketing done in connection with OneView Products.  Guest Tek's OneView
Products have achieved substantial commercial success and won praise from the industry.

13.     Upon information and belief, Defendant currently makes, uses, sells and/or offers to sell
in, and/or imports into, the United States, and/or has made, used, sold and/or offered to
sell in, and/or imported into, the United States, either directly and/or through or in
cooperation with others, products and/or solutions known as the Exceptional Innovation
iQx Platform ("iQx Platform") including the Model STB-4000 Set-Top Box ("STB-
4000"). In at least some instances, the STB-4000 is made, used, sold, offered for sale
and/or imported by, on or on behalf of, Defendant with a Chromecast device installed
therein.  For clarity, the term "STB-4000," when used alone, refers to a STB-4000
without a Chromecast device installed therein, and the term "STB-4000 with
Chromecast" refers to a STB-4000 with a Chromecast device installed therein.

14.     Upon information and belief, Defendant instructs and/or has instructed others to install a
Chromecast device inside of a STB-4000 that does not already have a Chromecast device
installed therein, and provides and/or has provided instructions on how to do so, and such
others have followed the instructions and installed a Chromecast device, and/or during

3

the term of the Patents-in-Suit, will follow the instructions to install a Chromecast device, inside of a STB-4000 that did not previously have a Chromecast device installed therein.

15. Upon information and belief, Defendant currently makes, uses, sells and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold and/or offered to sell in, and/or imported into, the United States, and/or, during the term of the Patents-in-Suit, will sell, either directly and/or through or in cooperation with others, products and/or solutions known as iQ cast entertainment solution ("iQ cast").

16. Upon information and belief, Defendant has prepared instructions to, instructs, has instructed, and/or, during the term of the Patents-in-Suit, will instruct, others to install, in a hotel already having a local area network ("LAN"), such equipment as is necessary to provide iQ cast within a hotel that did not previously have iQ cast, including instructions to install a computer, called an "iQ cast server," on the hotel's existing high speed internet access ("HSIA") network, and to install Chromecast devices in a HDMI port of TV's within guest rooms of the hotel, and such hotels have followed the instructions to install such equipment, and/or during the term of the Patents-in-Suit, will follow the instructions to install such equipment.

17. Upon information and belief, Defendant imports into, and/or offers for sale and/or sells in, the Unites States, has imported into, and/or offered for sale and/or sold in, and/or during the term of the Patents-in-Suit, will import into, and/or sell in, the United States, the iQ cast server.

18. Upon information and belief, the iQ cast server is a material part of iQ cast, and is especially adapted to provide iQ cast to an establishment such as a hotel.

4

19.    Upon information and belief, the iQ cast server is not a staple article or commodity of commerce suitable for substantial use other than in iQ cast.

20.    Defendant has had actual knowledge of the Patents-in-Suit, and of Guest-Tek's allegations that Defendant infringes the Patents-in-Suit, since at least October 31, 2017.

21.    The iQx Platform, including a STB-4000 with Chromecast,  are together referred to as an "Infringing Product," and iQ cast and the iQcast server are also each referred to as an "Infringing Product," and all are collectively referred to as "Infringing Products."

**The Infringing Products**

22.    Guest Tek and Defendant are direct competitors in the market for interactive solutions for the hospitality industry. Guest Tek's OneView Products compete against Defendant's STB-4000 and the Infringing Products.

23.    Upon information and belief, Defendant sells and/or offers for sale the STB-4000 and the Infringing Products to hotels directly, and/or through a family of related companies including interTouch and Quadriga ("Sister Companies") as demonstrated by the Defendant and the Sister Companies' websites:[1]

---

[1] www.exceptionalinnovation.com; www.intertouch.com; www.quadriga.com (last visited October 1, 2018).





24.    The iQx Platform comprises the STB-4000.  The STB-4000 is illustrated and described in

the STB-4000 User Manual, attached hereto as Exhibit C (the "STB-4000 User

Manual"):

6



25.     As described in the STB-4000 User Manual, a STB-4000 with Chromecast connects to a

hotel network and provides a virtual LAN by which a hotel guest can stream audio and

video from a personal device to an in-room TV connected to the STB-4000:

## HDMI Output for Streaming TV

The right-side rear-panel HDMI port accepts an HDMI cable for connecting audio and video to a TV HDMI input. This port is dedicated to streaming video/audio using an internally mounted device such as Chromecast.

26.     As described in the STB-4000 User Manual, a STB-4000 with Chromecast provides a

proxy to an internal Chromecast media device:

## HDMI Chromecast Connection to TV

The HDMI connection for Chromecast requires that the Chromecast media device be installed inside the STB-4000 chassis.

27.     As described on the interTouch website, which shares a common home page with the

Defendant, interTouch also offers the iQx platform and notes that it is powered by the

Defendant:[2]

---

[2] http://www.intertouch.com/solutions/iqx-platform/ (last visited October 1, 2018).



28.     As described on the Quadriga website, which shares a common home page with the

Defendant, Quadriga also offers the iQx platform and notes that it is powered by the

Defendant:[3]





---

[3] http://www.intertouch.com/solutions/iqx-platform/ (last visited October 1, 2018).

8

29. As described by a press release issued by Defendant, iQ cast allows a hotel to use its HSIA network, such as a wireless LAN, to provide audio and video streaming capability to a TV in a hotel guest room without requiring the hotel to purchase a set-top box, such as the STB-4000.[4]

30. As described on the interTouch website, which shares a common home page with the Defendant, interTouch also offers iQ cast, and the copyright notice at the bottom thereof, and the contact information under the "About" link thereon, refers to the Defendant.[5]

31. As described on the Quadriga website, which shares a common home page with the Defendant, Quadriga also offers Q cast, and the copyright notice at the bottom thereof, and the contact information under the "About" link thereon, refers to the Defendant.[6]

32. InterTouch and Quadriga share the same executive team as evidenced by the company websites.[7]

33. Seale Moorer, the Chief Executive Officer for all three companies, indicates on his biography that he cofounded "Exceptional Innovation and in 2013, he added The SmarTV Company, LLC to the Defendant portfolio followed by additional acquisitions of Quadriga and interTouch in 2015."[8]

**Count I: Direct Infringement of the 281 Patent by the iQx Platform/STB-4000 with Chromecast, and by iQ cast**

34. Guest Tek incorporates each of the preceding paragraphs as if fully set forth herein.

---

[4] http://www.exceptionalinnovation.com/2018/04/09/iq-cast-debut/ (last visited October 1, 2018)
[5] http://www.intertouch.com/solutions/iq-cast/ (last visited October 1, 2018)
[6] http://www.quadriga.com/solutions/iq-cast/ (last visited October 1, 2018)
[7] http://www.intertouch.com/company/regional-team/; http://www.quadriga.com/company/regional-team/ (last visited on October 1, 2018).

[8] *Id.*

35.    Hotel guests frequently carry a personal device, such as a smart phone, tablet, or
computer (hereinafter "personal device" or "guest device"). A hotel guest may desire to
render media content stored on or available via her personal device on the media device
in her guest room. For example, a hotel guest may have photos or music stored on her
personal device that she desires to render on the guest room's media device. Or, she may
wish to stream subscription programming available via her personal device, e.g., Netflix,
to the media device in her guest room. This may be done, for example, via a Chromecast
device installed in the STB-4000, or, in the case of iQ cast, via a Chromecast device
plugged into a media port, such as an HDMI port, of an in-room TV.

36.    The 281 Patent is directed to a media system and method for operating a media system
that selectively allows hotel guests to stream media content stored on, or available
through, their personal devices to the media device in their guest room via the hotel's
computer network.

37.    The system and method described and claimed in the 281 Patent prevents the media
content on a hotel guest's personal device from being streamed to a media device in
another guest room.

38.    Claim 1 of the 281 Patent is reproduced below and each paragraph has been annotated
with an identifying letter:

A media system comprising:

a)    a local area computer network installed at a hospitality establishment, the
hospitality establishment being a lodging establishment;

b)    a plurality of media devices coupled to the computer network and located in a
plurality of guest rooms of the hospitality establishment, the media devices being

10

audio-visual ("AV") entertainment devices providing media functions within the guest rooms to guests of the hospitality establishment; and

c)      a system controller coupled to the computer network;

d)      wherein the computer network allows a guest device supporting a network-based media sharing protocol to be coupled thereto, the guest device operated by a guest of the hospitality establishment;

e)      the computer network by default prevents the guest device from utilizing the network-based media sharing protocol to share media content with the media devices;

f)      the system controller selects a subset of the media devices for which media sharing is to be enabled for the guest device, the subset including at least one of the media devices but not all of the media devices, the subset of the media devices for which media sharing is to be enabled for the guest device being located in a specific guest room of the hospitality establishment;

g)      the system controller dynamically reconfigures one or more components of the computer network in response to an event occurrence to enable the guest device to utilize the network-based media sharing protocol to share media over the computer network with only the subset of the media devices;

h)      at least one of the components is a media proxy that supports the network-based media sharing protocol;

i)      the computer network blocks multicast announcements from the media devices from reaching the [g]uest device;

11

j)     the media proxy periodically multicasts an announcement according to the network-based media sharing protocol that indicates the media proxy is available on the computer network;

k)     the computer network allows the guest device to receive the announcement from the media proxy;

l)     the computer network allows the guest device to discover and share media with the media proxy utilizing the network-based media sharing protocol;

m)     the media proxy by default does not reroute media shared by the guest device to any of the media devices;

n)     the system controller dynamically reconfigures the media proxy in response to the event occurrence to cause the media proxy to reroute media shared by the guest device to one or more of the subset of the media devices;

o)     at least one of the subset of the media devices supports the network-based media sharing protocol; and

p)     when rerouting media shared by the guest device to the one or more of the subset of the media devices, the media proxy redirects a media stream received from the guest device to the at least one of the subset of the media devices that supports the network-based media sharing protocol.

39.     Upon information and belief, and without authorization from the Guest Tek, Defendant makes, uses, sells and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold and/or offered to sell in, and/or imported into, the United States, and/or, during the term of the 281 Patent, will sell in the United States, either directly

and/or through or in cooperation with others, the iQx Platform/STB-4000 with

Chromecast, and iQ cast, both of which are covered by at least claim 1 of the 281 Patent.

40.     The factual allegations of paragraph nos.41 through 71 are upon information and belief.

**The iQx Platform/STB-4000 with Chromecast**

41.     The iQx Platform comprises the STB-4000. Particularly, the STB-4000 is an AV

entertainment device having media functions that allow a hotel guest to, for example,

access the internet, play music, play games, and watch video programming on a device,

such as a TV, connected to the STB-4000.

42.     The iQx Platform comprises a plurality of STB-4000's located in a plurality of guest

rooms.  For at least this reason, the iQx Platform comprises a "plurality of media

devices" as recited by paragraph b) of claim 1 of the 281 Patent.

43.     Each STB-4000 includes a central processing unit ("CPU") connected to a computer

network, as set forth below. For at least this reason, the iQx Platform comprises a

"system controller" as recited by paragraph c) of claim 1 of the 281 Patent.

44.     Within a hotel, the plurality of STB-4000's, including their CPU's, are connected to a

hotel's LAN, as recited by paragraph a) of claim 1 of the 281 Patent. The hotel LAN

includes a WiFi network.

45.     Within a hotel using STB-4000's with Chromecast, a hotel guest can connect a personal

device to the LAN, for example, via the WiFi network.  This is typically done via the

Chromecast device.  By default, the LAN prevents the personal device from sharing

content with a STB-4000.

46.     By way of example, some of the service set identifiers ("SSIDs") (the names associated

with the WiFi network) presented by the LAN connect a guest device to an STB-4000

13

with Chromecast, but no connection can be established with them until the guest takes further action. In addition, the LAN prevents the personal device from utilizing the Chromecast device on SSID's to which the guest is not connected. For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraphs d) and e) of claim 1 of the 281 Patent.

47. Within a hotel using STB-4000's with Chromecast, the Chromecast device can be configured by a guest to allow her personal device to share content with the STB-4000 in her guest room via a secure SSID created on the WiFi network. When this has been done, the STB-4000 prompts the guest to begin a session by which content available via the personal device can be shared with the STB-4000 in her guest room. By way of example, a guest can select a Chromecast menu option via the STB-4000 such that a new SSID with an identifier associated with the guest room is presented, and the guest can connect her personal device to the LAN via the new SSID. Once a connection to the new SSID has been made, the guest is prompted to begin a Chromecast session. Once the guest has responded to the prompt so as to begin a Chromecast session, a prompt is presented to the guest stating "Simply tap the Cast button in an app and choose a video to play on your TV." In response to the guest selecting "Okay" via the STB-4000's remote control, the guest is able to share media, using the Chromecast device within the STB-4000 via her personal device. Thus, at least one component of the LAN is dynamically reconfigured in response to the guest responding to the prompt. For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraphs f) and g) of claim 1 of the 281 Patent.

48.     Within a hotel using STB-4000's with Chromecast that have been configured as recited above, the STB-4000 serves as a proxy between the guest's personal device and the Chromecast device within the STB-4000 because it proxies data (content) between the guest's personal device and the Chromecast device. For at least this reason, at least one of the components is a "media proxy" as recited by paragraph h) of claim 1 of the 281 Patent.

49.     Within a hotel using STB-4000's with Chromecast, the LAN broadcasts multicast announcements that contain information about traffic on the LAN to personal devices connected to the LAN.  When a personal device is connected to the LAN via an SSID associated with a Chromecast session, the multicast announcement includes information about the Chromecast session.  When the personal device is connected to the LAN via a different SSID, there is no information about the Chromecast session in the multicast announcement.  For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraphs i), j) and k) of claim 1 of the 281 Patent.

50.     Within a hotel using STB-4000's with Chromecast, and as set forth above, once a Chromecast session has been initiated, the LAN discovers the guest's personal device and allows content to be shared with the STB-4000 via the personal device.  For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph l) of claim 1 of the 281 Patent.

51.     Within a hotel using STB-4000's with Chromecast, the STB-4000 will not route content that it has received from the guest's personal device to any of the Chromecast devices, and hence the content will not be rendered on a TV or other AV device connected

thereto. For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph m) of claim 1 of the 281 Patent.

52. Within a hotel using STB-4000's with Chromecast, and as set forth above, once the guest has responded to the prompt and a Chromecast session has been initiated, the CPU allows the STB-4000 to route the content that it receives from the guest's personal device to a Chromecast device and media playback begins. For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises comprise the structure and functionality recited by paragraph n) of claim 1 of the 281 Patent.

53. Within a hotel using STB-4000's with Chromecast, the STB-4000 in the guest room has been configured to allow a Chromecast session. For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph o) of claim 1 of the 281 Patent.

54. Within a hotel using STB-4000's with Chromecast, and as set forth above, once a Chromecast session has been initiated, the CPU redirects the media stream from the guest's personal device to the internally installed Chromecast media device within the STB-4000. The output of the Chromecast device is sent via the STB-4000's Chromecast HDMI port, to the TV or other AV equipment connected thereto. For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph p) of claim 1 of the 281 Patent.

**iQ cast**

55. Within a hotel using iQ cast, a hotel guest can stream content via her personal device to her in-room TV, and therefore iQ cast is a media system, as recited by the preamble of claim 1 of the 281 Patent.

16

56.     Within a hotel using iQ cast, the hotel's existing LAN is used to stream content. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph a) of claim 1 of the 281 Patent.

57.     Within a hotel using iQ cast, Chromecast devices are installed on guest room TV's and communicate via a network, and the TV settings are configured to implement Chromecast as a TV channel via an HDMI port selection. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph b) of claim 1 of the 281 Patent.

58.     Within a hotel using iQ cast, there is an iQ cast server coupled to the hotel's LAN. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph c) of claim 1 of the 281 Patent.

59.     Within a hotel using iQ cast, the hotel's LAN allows a guest device that supports Chromecast functionality to be coupled to the LAN. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph d) of claim 1 of the 281 Patent.

60.     Within a hotel using iQ cast, a guest can login to the hotel's HSIA network and register her device. After registration, the guest's device is associated with the room by the iQ cast server. Before registration, the guest device is unable to share media with the in room media device, i.e., the in-room Chromecast device. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph e) of claim 1 of the 281 Patent.

61.     Within a hotel using iQ cast, there is a Guest virtual local area network ("VLAN") by which a guest can use the hotel's HSIA network. The iQ cast server has access to the

Guest VLAN. There is also a Chromecast VLAN by which the Chromecast devices communicate with the iQ cast server. The iQ cast server associates with the guest rooms those Chromecast devices for which media sharing is enabled. The guest can only view content via the Chromecast device in that room. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph f) of claim 1 of the 281 Patent.

62.    Within a hotel using iQ cast, the iQ cast server is configured to associate a guest device to a guest room once the guest has logged into the hotel's HSIA and provided a name and room number. The guest can then use the Chromecast device associated with that guest room.  The guest can only view content via the Chromecast device in that room. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph g) of claim 1 of the 281 Patent.

63.    Within a hotel using iQ cast, the iQ cast server acts as a media proxy that supports a network-based media sharing protocol. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph h) of claim 1 of the 281 Patent.

64.    Within a hotel using iQ cast, Chromecast devices are on the Chromecast VLAN and guest devices are on the Guest VLAN, and multicast announcements on the Chromecast VLAN are blocked from reaching the guest devices. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph i) of claim 1 of the 281 Patent.

65.    Within a hotel using iQ cast, the iQ cast server sends multicast announcements on the Guest VLAN in accordance with the Chromecast device standard in order for the guest

devices to connect to the iQ cast server. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph j) of claim 1 of the 281 Patent.

66.    Within a hotel using iQ cast, the iQ cast server sends multicast announcements on the Guest VLAN in order for the guest devices to receive the announcements. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph k) of claim 1 of the 281 Patent.

67.    Within a hotel using iQ cast, the hotel's HSIA allows the guest to use the Chromecast device in her room via the iQ cast server, and iQ cast server serves as the media proxy. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph l) of claim 1 of the 281 Patent.

68.    Within a hotel using iQ cast, if a guest connects to the hotel's HSIA without having first associated her guest device with her room, the iQ cast server will not route media shared by the guest device to any of the Chromecast devices. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph m) of claim 1 of the 281 Patent.

69.    Within a hotel using iQ cast, the iQ cast server is responsible for associating and disassociating guest devices with guest rooms, and clears all Chromecast data at guest check-in and check-out. When a new guest checks into a room and logs into the hotel's HSIA with her name and guest room number with her guest device, that guest's device is associated with the iQ cast server, and media can be shared between her device and the Chromecast device in her room. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph n) of claim 1 of the 281 Patent.

19

70.     Within a hotel using iQ cast, the Chromecast devices connected to the in room TV's support the Chromecast protocol. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph o) of claim 1 of the 281 Patent.

71.     Within a hotel using iQ cast, the media that is shared by the guest device is shared with the iQ cast server, and the iQ cast server directs the media shared by the guest device to the Chromecast device in her room. For at least this reason, iQ cast comprises and/or employs the structure and function recited by paragraph p) of claim 1 of the 281 Patent.

72.     Defendant has directly infringed, and continues to directly infringe, and/or, during the term of the 281 Patent, will directly infringe, at least claim 1 of the 281 Patent by making, using, selling, offering for sale in, and/or importing into, the United States, Infringing Products, as described above.

73.     Defendant has been on actual notice that it infringes the 281 Patent.  Guest Tek has marked its products. Additionally, Defendant has had actual knowledge of its infringement of the 281 Patent at least since about October 31, 2017, when Guest Tek filed this action.  Defendant has deliberately, intentionally and willfully infringed the 281 Patent, and continues to do so.

74.     As a direct result of Defendant's infringing acts, Guest Tek has suffered and will continue to suffer damage and irreparable harm.

75.     Unless Defendant and those acting in active concert with Defendant are enjoined from infringing the 281 Patent, Guest Tek will suffer irreparable injury for which damages are an inadequate remedy.

**Count II: Direct Infringement of the 172 Patent by the iQx Platform/STB-4000 with Chromecast, and by iQ cast.**

76. Guest Tek incorporates each of the preceding paragraphs as if fully set forth herein.

77. The 172 Patent is directed to a media proxy that selectively allows hotel guests to stream media content stored on, or available through, their personal devices to a media device in their guest room via the hotel's LAN.

78. The media proxy described and claimed in the 172 Patent facilitates sharing of media content from the hotel guest's personal device with the media device in her guest room and prevents media content from also being streamed to the media device in another guest room.

79. Claim 1 of the 172 Patent is reproduced below and each paragraph thereof has been annotated with an identifying letter:

80. A media proxy comprising:

   a)    a storage device storing a plurality of software instructions and a set of proxy rules;

   b)    a network interface coupled to a computer network; and

   c)    one or more processors coupled to the storage device and the network interface; wherein, by the one or more processors executing the software instructions loaded from the storage device, the one or more processors are operable to cause the media proxy at least to:

   d)     update the set of proxy rules to associate an identifier of a guest device with a subset of a plurality of media devices in response to a first event occurrence;

   e)    wherein the guest device is operable by a guest of a hospitality establishment;

f)      the media devices are AV entertainment devices located within guest rooms of the hospitality establishment, are streaming destinations capable of playing media content initiated by the guest device utilizing a network based media sharing protocol, and are isolated from the guest device such that the media devices are not directly accessible over the computer network by the guest device;

g)      the subset of the media devices represents one or more of the media devices for which media sharing is to be enabled for the guest device; and

h)      the subset of the media devices includes at least one of the media devices but not all of the media devices;

i)      receive from the guest device via the computer network a query for available media devices supporting the network based media sharing protocol;

j)      send via the computer network a reply announcing availability of the media proxy as a streaming destination supporting the network-based media sharing protocol at a network address of the media proxy on the computer network;

k)      receive from the guest device at the network address of the media proxy an incoming request to initiate media streaming playback utilizing the network-based media sharing protocol;

l)      perform at least one transparent proxy operation between the guest device and a selected one of the subset of the media devices determined to be associated with the identifier of the guest device according to the set of proxy rules thereby enabling the guest device to initiate media streaming playback on the selected one of the subset of the media devices according to the network-based media sharing protocol; and

m)    send an input port selection command to a display device located in a guest room of the hospitality establishment, the input port selection command causing the display device to switch to a first input port and begin playing media initiated for playback on the selected one of the subset of the media devices, the media initiated for playback on the selected one of the subset of the media devices being received by the display device on the first input port.

81.    Upon information and belief, and without authorization from Guest Tek, Defendant makes, uses, sells and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold and/or offered to sell in, and/or imported into, the United States, and/or, during the term of the 172 Patent, will sell in the United States, either directly and/or through or in cooperation with others, the iQx Platform/STB-4000 with Chromecast, and iQ cast, both of which are covered by at least claim 1 of the 172 Patent.

82.    The factual allegations of paragraphs 83 through 105 are upon information and belief.

**The iQx Platform/STB-4000 with Chromecast**

83.    The STB-4000 with Chromecast is an AV entertainment device having media functions that allow a hotel guest to, for example, use a personal device to access the internet, play music, play games, and watch video programming on a device, such as a TV, connected to the STB-4000.  At least one of the components is a media proxy.

84.    Each STB-4000 includes a CPU and a memory and an interface for connecting to a computer network as recited by paragraphs a), b), and c) of claim 1 of the 172 Patent.  Thus, the STB-4000 comprises a one or more processors coupled to a storage device and the network interface.  The CPU executes software instruction from the storage device as recited by paragraph c) of claim 1 of the 172 Patent.

85.    When a guest device connects by way of the network to a STB-4000 with Chromecast, the STB-4000 stores information about the guest device.  When desired by the hotel guest, the STB-4000 further associates the guest device with the Chromecast device installed within the STB-4000 to enable casting operations.  For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph d) of claim 1.

86.    A STB-4000 with Chromecast is designed to operate with a personal device of a hotel guest.  For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph e) of claim 1of the 172 Patent .

87.    STB-4000's are designed to connect to a hotel network to extend the LAN within a guest room and to connect to a TV.  The network connection allows a personal device that supports a network-based media sharing protocol (e.g., Chromecast) to connect to a STB-4000 with Chromecast by way of the LAN in order to initiate media content playback on the Chromecast device installed within the STB-4000 for playback on the TV.  A separate STB-4000 with Chromecast is installed in each of plurality of guest rooms, and the Chromecast device within each STB-4000 is not directly accessible to the guest personal device.  For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph f) of claim 1 of the 172 Patent .

88.    Within a STB-4000 with Chromecast, media sharing functions on the Chromecast device as initiated by the guest device, are selectively enabled by the STB-4000. The STB-4000 controls whether the guest device is able to initiate media content playback on that Chromecast device.  For at least this reason, the iQx Platform/STB-4000 with

Chromecast comprises the structure and functionality recited by paragraph g) of claim 1 of the 172 Patent.

89.   Within a hotel having STB-4000's with Chromecast, a guest can configure the STB-4000 so as to allow her personal device to share content with the STB-4000 in her guest room via a secure SSID created on the WiFi network.  The STB-4000 prompts the guest to begin a session by which content initiated via the personal device can be shared with the STB-4000 in her guest room.  By way of example, a guest can select a Chromecast menu option via the STB-4000 such that a new SSID with a Chromecast identifier associated with the guest room is presented, and the guest can connect her personal device to the LAN via the new SSID.  Once a connection to the new SSID has been made, the guest is prompted to begin a Chromecast session.  Once the guest has responded to the prompt so as to begin a Chromecast session, a prompt is presented to the guest stating "Simply tap the Cast button in an app and choose a video to play on your TV."  In response to the guest selecting "Okay" via the STB-4000's remote control, the guest is able to share media, using Chromecast, with the STB-4000 via her personal device.  For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraphs g), h), i), j), and k) of claim 1 of the 172 Patent.

90.   Each STB-4000 with Chromecast that has been configured as recited above serves as a proxy between the guest's personal device and the Chromecast device within the STB-4000 because it proxies data between the guest's personal device and the Chromecast device.  Once a Chromecast session has been initiated, the guest device can initiate media content playback and the LAN allows content to be shared with the STB-4000 for

playback through the Chromecast device.  For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph l) of claim 1 of the 172 Patent.

91.     As set forth above, with a STB-4000 with Chromecast, once a Chromecast session has been initiated, media content playing on the Chromecast device is sent via a particular HDMI port on the STB-4000 to the in-room TV connected thereto. The CPU of the STB-4000 sends an input port selection command to the in-room TV causing the TV to switch its active HDMI port to the particular HDMI port that is coupled to the Chromecast device. After the input port selection command is sent to the TV, the hotel guest sees on the in-room TV the media content playing on the Chromecast device.   For at least this reason, the iQx Platform/STB-4000 with Chromecast comprises the structure and functionality recited by paragraph m) of claim 1 of the 172 Patent.

**iQ cast**

92.     Within a hotel having iQ cast, the iQ cast server serves as a media proxy, as recited by the preamble of claim 1 of the 172 Patent.

93.     Within a hotel having iQ cast, the iQ cast server comprises a storage device that stores software instructions. The Chromecast devices in each room are associated with the iQ cast server. The iQ cast server is also given access to the Guest VLAN. The iQ cast server stores information about the in-room Chromecast devices and the personal devices on the Guest VLAN in the form of proxy rules. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph a) of claim 1 of the 172 Patent.

94.     Within a hotel having iQ cast, the iQ cast server has an network interface that is used to couple the iQ cast server to a hotel network. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph b) of claim 1 of the 172 Patent.

95.     Within a hotel having iQ cast, the iQ cast server has at least one processor and memory storage.  The processor communicates with the network interface that is also part of the iQ cast server, and executes software instructions that are stored on a storage device.  The processor executing the software instructions causes the media proxy to carry out the operations and perform the functions recited below. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph c) of claim 1 of the 172 Patent.

96.     Within a hotel having iQ cast, the iQ cast server is configured to associate a guest device to a guest room when the guest has logged into the hotel's HSIA login portal, and provided a name and room number.  The guest is associated with the Chromecast device associated with the guest's room when the guest logs into the hotel's HSIA. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph d) of claim 1 of the 172 Patent.

97.     Within a hotel having iQ cast, the iQ cast solution allows guests to use their own devices to stream content. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph e) of claim 1 of the 172 Patent.

98.     Within a hotel having iQ cast, Chromecast devices are located in guest rooms and are capable of playing media content initiated by the guest devices using the Chromecast protocol. The Chromecast devices and guest devices are on separate VLANs. For at least

this reason, iQ cast comprises the structure and functionality recited by paragraph f) of claim 1 of the 172 Patent.

99.  Within a hotel having iQ cast, media sharing is enabled only for a Chromecast device associated to the guest's room. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph g) of claim 1 of the 172 Patent.

100.  Within a hotel having iQ cast, a guest can only share media with the Chromecast device in the guest's room, but not in the adjoining or surrounding rooms. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph h) of claim 1 of the 172 Patent.

101.  Within a hotel having iQ cast, in order to find available Chromecast devices, the guest device searches for devices on the network.  The iQ cast server will only allow a guest device to share media with a Chromecast device associated with a guest's room. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph i) of claim 1 of the 172 Patent.

102.  Within a hotel having iQ cast, the IQ cast server sends an announcement over the Guest VLAN using a mDNS message in the same format as a Chromecast device that provides a network address of the iQ cast server. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph j) of claim 1 of the 172 Patent.

103.  Within a hotel having iQ cast, the Chromecast devices are on the Chromecast VLAN. The iQ cast server receives, over the Guest VLAN,  the request from the guest device to initiate media streaming. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph k) of claim 1 of the 172 Patent.

104. Within a hotel having iQ cast, the iQ cast server has access to the Chromecast and Guest VLAN's. The iQ cast server enables the guest to initiate media streaming via the Chromecast device associated with the guest's room. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph l) of claim 1 of the 172 Patent.

105. Within a hotel having iQ cast, the iQ cast server causes the input port on the TV to switch to the Chromecast HDMI port. It is received by the TV via FTG channel mapping. Thereafter, the Chromecast device can display media on the TV by way of the HDMI port. For at least this reason, iQ cast comprises the structure and functionality recited by paragraph m) of claim 1 of the 172 Patent.

106. Defendant has directly infringed, and continues to directly infringe, and/or, during the term of the 172 Patent, will directly infringe, at least claim 1 of the 172 Patent by making, using, selling, offering for sale in, and/or importing into, the United States, Infringing Products as described above.

107. Defendant has been on actual notice that it infringes the 172 Patent.  Guest Tek has marked its products. Additionally, Defendant has had actual knowledge of its infringement of the 172 Patent at least since about October 31, 2017, when Guest Tek filed this action.  Defendant has deliberately, intentionally and willfully infringed the 172 Patent, and continues to do so.

108. As a direct result of Defendant's infringing acts, Guest Tek has suffered and will continue to suffer damage and irreparable harm.

109.    Unless Defendant and those acting in active concert with Defendant are enjoined from infringing the 172 Patent, Guest Tek will suffer irreparable injury for which damages are an inadequate remedy.

**Count III: Indirect Infringement of the 281 Patent – Inducement**

110.    Guest Tek incorporates each of the preceding paragraphs as if fully set forth herein.

111.    The factual allegations of paragraphs 112 through 120 are upon information and belief.

**STB-4000/Chromecast**

112.    Defendant currently makes, uses, sells and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold and/or offered to sell in, and/or imported into, the United States, either directly and/or through or in cooperation with others, STB-4000's.

113.    As manufactured and sold by Defendant, STB-4000's are each equipped with an internal HDMI port which is specifically designated to receive a Chromecast device.

114.    Installation of a Chromecast device into a STB-4000, by plugging the Chromecast device into the specifically designated HDMI port, completes the invention defined by at least claim 1 of the 281 Patent, for the reasons set forth above.

115.    Defendant anticipates that purchasers and/or owners of STB-4000's may wish to install, and/or have installed, Chromecast devices into their STB-4000's following their purchase thereof and/or at some time during their ownership or use thereof.

116.    Defendant has been aware of, and had knowledge of, the 281 Patent since at least October 31, 2017.

117.    Defendant has been aware, since at least October 31, 2017, of Guest Tek's allegations that the iQx Platform, including STB-4000's with Chromecast, when installed in hotels, satisfy at least claim 1 of the 281 Patent.

118.    Defendant has been aware, since at least October 31, 2017, of Guest Tek's allegations that Defendant's activities in making, using, selling, offering for sale in the United States, and/or importing into the United States, iQx Platforms that include STB-4000's with Chromecast constitute direct infringement of the 281 Patent.

119.    Defendant has encouraged and encourages purchasers and owners of STB-4000's to install for use Chromecast devices therein so as to complete the invention of claim 1 of the 281 Patent and thus to infringe the 281 Patent.

120.    Defendant's encouraging activity includes, but is not limited to, providing detailed written instructions as to how to remove a secure door from the STB-4000 using a "security" key, installing a Chromecast device into the compartment concealed by the door, inserting it into the specifically designated HDMI port, and reinstalling the secure door.

121.    Through its acts of instructing others how to install a Chromecast device into the specifically designated HDMI port in a STB-4000, and with knowledge of the 281 Patent and Guest Tek's infringement allegations relating thereto, Defendant has intended, and intends, that others directly infringe the 281 Patent.

122.    Defendant's acts of encouraging and instructing others to install a Chromecast device in a STB-4000, as alleged herein, have resulted in direct infringement of, and/or, during the term of the 281 Patent, will result in direct infringement of, the 281 Patent by others, including, but not limited to, Quadriga and Intertouch.

123. Defendant's acts, as alleged herein, constitute indirect infringement of the 281 Patent under 35 U.S.C. § 271(b).

124. As a direct result of Defendant's acts of indirect infringement of the 281 Patent, Guest Tek has suffered and will continue to suffer damage and irreparable harm.

125. Unless Defendant and those acting in active concert with Defendant are enjoined from indirectly infringing the 281 Patent, Guest Tek will suffer irreparable injury for which damages are an inadequate remedy.

**iQ cast**

126. The factual allegations of paragraphs 127 through 132 are upon information and belief.

127. Defendant currently makes, uses, sells and/or offers to sell in, and/or imports into, the United States, and/or has made, used, sold and/or offered to sell in, and/or imported into, the United States, and/or, during the term of the 281 Patent, will sell in the United States, either directly and/or through or in cooperation with others, iQ cast servers.

128. iQ cast servers are specifically designed and programmed to implement and support the iQ cast solution.

129. Installation of an iQ cast server on a hotel's existing HSIA, and of Chromecast devices on TV's in guest rooms of the hotel, and configuring the TV settings to implement Chromecast as a TV channel via an HDMI port selection, completes and/or will complete the invention of at least claim 1 of the 281 Patent, for the reasons set forth above.

130. Defendant anticipates that hotels may wish to install, and/or have installed, iQ cast servers on their LAN's, and Chromecast devices in the TV's in their guest rooms, as set forth above, so as to provide hotel guests with the ability to stream content from their

personal devices to their TV's, using Chromecast, without the need to purchase and/or install a STB-4000 with Chromecast.

131. Defendant instructs, has instructed, and/or, during the term of the 281 Patent, will provide instructions to, others to install, in a hotel already having a LAN, such equipment as is necessary to provide iQ cast within a hotel that did not previously have iQ cast, including instructions to install an iQ cast server on the hotel's existing HSIA, to install Chromecast devices to an HDMI port of TV's within guest rooms of the hotel, and to configure the TV's settings to implement Chromecast as a TV channel with an HDMI port selection.

132. Defendant encourages purchasers and owners of iQ cast servers to install an iQ cast server on the hotel's existing HSIA, to install Chromecast devices to an HDMI port of TV's within guest rooms of the hotel, and to configure the TV's settings to implement Chromecast as a TV channel with an HDMI port selection so as to complete the invention of at least claim 1 of the 281 Patent and thus to infringe the 281 Patent.

133. Defendant has been aware of, and had knowledge of, the 281 Patent since at least October 31, 2017.

134. Through its acts of instructing others how to install an iQ cast server on a hotel's existing HSIA, how to install Chromecast devices on an HDMI port of TV's within guest rooms of the hotel, and how to configure the TV's settings to implement Chromecast as a TV channel with an HDMI port selection, and with knowledge of the 281 Patent and Guest Tek's previous infringement allegations as they relate to the STB-4000 with Chromecast, Defendant has intended, and intends, that others directly infringe the 281 Patent.

135.    Defendant's has known, and knows, that its acts, as alleged herein, would result in others infringing the 281 Patent.

136.    Defendant's acts, as alleged herein, have resulted in direct infringement of, and/or, during the term of the 281 Patent, will result in direct infringement of, the 281 Patent by others, including, but not limited to, direct infringement by Quadriga and Intertouch.

137.    Defendant's acts, as alleged herein, constitute indirect infringement of the 281 Patent under 35 U.S.C. § 271 (b).

138.    As a direct result of Defendant's acts of indirect infringement of the 281 Patent, Guest Tek has suffered and will continue to suffer damage and irreparable harm.

139.     Unless Defendant and those acting in active concert with Defendant are enjoined from indirectly infringing the 281 Patent, Guest Tek will suffer irreparable injury for which damages are an inadequate remedy.

**Count IV: Indirect Infringement of the 172 Patent - Inducement**

140.    Guest Tek incorporates each of the preceding paragraphs as if fully set forth herein.

**STB-4000/Chromecast**

141.    Installation of a Chromecast device into a STB-4000, by plugging the Chromecast device into the specifically designated HDMI port, completes the invention defined by claim 1 of the 172 Patent, for the reasons set forth above.

142.    Upon information and belief, Defendant encourages purchasers and owners of STB-4000's to install Chromecast devices therein so as to complete the invention of at least claim 1 of the 172 Patent and thus to infringe the 172 patent.

143.   Defendant has been aware, since at least October 31, 2017, of Guest Tek's allegations that the iQx Platform, including STB-4000's with Chromecast, when installed in hotels, satisfy at least claim 1 of the 172 Patent.

144.   Defendant's has been aware, since at least October 31, 2017, of Guest Tek's allegations that Defendant's activities in making, using, selling, offering for sale in the United States, and/or importing into the United States, iQx Platforms that include STB-4000's with Chromecast constitute direct infringement of the 172 Patent.

145.   Through its acts of instructing others how to install a Chromecast device into the specifically designated HDMI port in a STB-4000, and with knowledge of the 172 Patent and Guest Tek's infringement allegations relating thereto, Defendant has intended, and intends, that others directly infringe the 172 Patent.

146.   Defendant's acts of encouraging and instructing others to install a Chromecast device in a STB-4000, as alleged herein, have resulted in direct infringement of, and/or, during the term of the 172 Patent, will result in direct infringement of, the 172 Patent by others, including Quadriga and Intertouch.

147.   Defendant's acts, as alleged herein, constitute indirect infringement of the 172 Patent under 35 U.S.C. § 271 (b).

148.   As a direct result of Defendant's acts of indirect infringement of the 172 Patent, Guest Tek has suffered and will continue to suffer damage and irreparable harm.

149.   Unless Defendant and those acting in active concert with Defendant are enjoined from indirectly infringing the 172 Patent, Guest Tek will suffer irreparable injury for which damages are an inadequate remedy.

**iQ cast**

150.  Upon information and belief, installation of an iQ cast server on a hotel's existing HSIA, and of Chromecast devices on TV's in guest rooms of the hotel, and configuring the TV settings to implement Chromecast as a TV channel via an HDMI port selection, completes the invention of at least claim 1 of the 172 Patent, for the reasons set forth above.

151.  Through its acts of instructing others how to install an iQ cast server on a hotel's existing HSIA, how to install Chromecast devices on an HDMI port of TV's within guest rooms of the hotel, and how to configure the TV's settings to implement Chromecast as a TV channel with an HDMI port selection, and with knowledge of the 172 Patent and Guest Tek's previous infringement allegations as they relate to the STB-4000 with Chromecast, Defendant encourages, and has encouraged, others to complete the invention of claim 1 of the 172 Patent.

152.  Through its acts of instructing others how to install an iQ cast server on a hotel's existing HSIA, how to install Chromecast devices on an HDMI port of TVs within guest rooms of the hotel, and how to configure the TVs' settings to implement Chromecast as a TV channel with an HDMI port selection, and with knowledge of the 172 Patent and Guest Tek's infringement allegations as they relate to the STB-4000 with Chromecast, Defendant has intended, and intends, that others directly infringe the 172 Patent.

153.  Defendant's has known, and knows that, its acts, as alleged herein, would result in others infringing the 172 Patent.

154.  Defendant has been aware of, and had knowledge of, the 172 patent since at least October 31, 2017.

36

155. Defendant's acts, as alleged herein, have resulted in direct infringement of, and/or, during the term of the 172 Patent, will result in direct infringement of the 172 Patent by others, including but not limited to, direct infringement, by Quadriga and Intertouch.

156. Defendant's acts, as alleged herein, constitute indirect infringement of the 172 Patent under 35 U.S.C. § 271 (b).

157. As a direct result of Defendant's acts of indirect infringement of the 172 Patent, Guest Tek has suffered and will continue to suffer damage and irreparable harm.

158. Unless Defendant and those acting in active concert with Defendant are enjoined from indirectly infringing the 172 Patent, Guest Tek will suffer irreparable injury for which damages are an inadequate remedy.

**Count V: Contributory Infringement of the 281 Patent by iQ cast Servers**

159. Guest Tek incorporates each of the preceding paragraphs as if fully set forth herein.

160. The factual allegations of paragraphs 161 through 165 are upon information and belief.

161. Defendant has offered to sell in, and/or sold in, the United States, and/or imported into the United States, and/or, during the term of the 281 Patent, will sell in the United States, iQ cast servers.

162. For the reasons set forth above, iQ cast servers are and/or will be a component and material part, of Defendant's infringing iQ cast solution.

163. iQ cast servers are and/or will be programmed so as be to specially made for use in connection with the iQ cast solution, and are not a staple article or commodity or commodity of commerce.

164. iQ cast servers have no substantial use other than other than in connection with the infringing iQ cast solution.

165.   Accordingly, iQ cast servers constitute a material component of the system defined by claim 1 of the 281 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use in respect to at least claim 1 of the 281 Patent.

166.   Defendant has been aware of, and had knowledge of, the 281 Patent since at least October 31, 2017.

167.   Defendant has been aware, since at least October 31, 2017, that, once an iQ cast server has been installed in a hotel, together with the installation of Chromecast devices in the guest room TV sets, and configured as described above, such installation would satisfy at least claim 1 of the 281 Patent.

168.   Defendant has been aware, since at least October 31, 2017, that, once an iQ cast server has been installed in a hotel, together with the installation of Chromecast devices in the guest room TV sets, and configured as described above, such installation would result in direct infringement of at least claim 1 of the 281 Patent.

169.   Accordingly, Defendant has contributed to infringement of the 281 Patent through its selling, offering for sale and/or importing of iQ cast servers.

170.   Defendant's acts, as alleged herein, have resulted in direct infringement of, and/or, during the term of the 281 Patent, will result in direct infringement of, the 281 Patent by others, including, but not limited to, direct infringement, by Quadriga and Intertouch.

171.   Defendant's acts, as alleged herein, constitute indirect infringement of the 281 Patent under 35 U.S.C. § 271 (c).

172.   As a direct result of Defendant's acts of indirect infringement of the 281 Patent, Guest Tek has suffered and will continue to suffer damage and irreparable harm.

173. Unless Defendant and those acting in active concert with Defendant are enjoined from indirectly infringing the 281 Patent, Guest Tek will suffer irreparable injury for which damages are an inadequate remedy.

**Count VI: Contributory Infringement of the 172 Patent by iQ cast Servers**

174. Guest Tek incorporates each of the preceding paragraphs as if fully set forth herein.

175. Upon information and belief, iQ cast servers constitute a material component of the system defined by claim 1 of the 172 Patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use in respect to at least claim 1 of the 172 Patent.

176. Defendant has been aware of, and had knowledge of, the 172 Patent since at least October 31, 2017.

177. Defendant has been aware, since at least October 31, 2017, that, once an iQ cast server has been installed in a hotel, together with the installation of Chromecast devices in the guest room TV sets, and configured as described above, such installation would satisfy at least claim 1 of the 172 Patent.

178. Defendant has been aware, since at least October 31, 2017, that, once an iQ cast server has been installed in a hotel, together with the installation of Chromecast devices in the guest room TV sets, and configured as described above, such installation would result in direct infringement of at least claim 1 of the 172 Patent.

179. Accordingly, Defendant has contributed to infringement of the 172 Patent through its selling, offering for sale and/or importing of iQ cast servers.

180.   Defendant's acts, as alleged herein, have resulted in direct infringement of, and/or, during the term of the 172 Patent, will result in direct infringement of, the 172 Patent by others, including, but not limited to, direct infringement, by Quadriga and Intertouch.

181.   Defendant's acts, as alleged herein, constitute indirect infringement of the 172 Patent under 35 U.S.C. § 271 (c).

182.   As a direct result of Defendant's acts of indirect infringement of the 172 Patent, Guest Tek has suffered and will continue to suffer damage and irreparable harm

## PRAYER FOR RELIEF

Guest Tek respectfully requests the following relief from this Court:

(a)     Judgment that Defendant has directly and indirectly infringed one or more claims of each of the Patents-in-Suit;

(b)     Entry of a preliminary and permanent injunction against Defendant and those in privity with it and acting in concert with it from further acts of direct and indirect infringement of the Patents-in-Suit, such as through the making, selling, offering for sale and/or importing the Infringing Products and/or inducing others to use the Infringing Products and contributing to infringement of the Patents-in-Suit;

(c)     An award to Guest Tek of damages adequate to compensate it for all infringement occurring through the date of judgment, with prejudgment interest, and for any supplemental damages as appropriate and post-judgment interest after that date;

(d)     Judgment that Defendant's infringement has been willful; and an award of triple damages as a result of Defendant's willful infringement.

(e)     Judgment that this case is exceptional under 35 U.S.C. § 285.

(f)     An award of reasonable attorneys' fees and costs; and

(g)     An award of such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Guest Tek hereby demands a trial by jury of all issues so triable.

Dated: December 17, 2018                  Respectfully submitted,


                                          /s/  Lauren M. Hilsheimer
                                          Lauren M. Hilsheimer  (0085389)
                                          Email:   lhilsheimer@bakerlaw.com
                                          Andrew E. Samuels  (0090189)
                                          Email:   asamuels@bakerlaw.com
                                          BAKER & HOSTETLER LLP
                                          200 Civic Center Drive, Suite 1200
                                          Columbus, OH  43215-4138
                                          Telephone:   614-228-1541
                                          Facsimile:    614-462-2616

                                          Steven J. Rocci (*pro hac vice*)
                                          Email:   srocci@bakerlaw.com
                                          Daniel J. Goettle (*pro hac vice*)
                                          Email:   dgoettle@bakerlaw.com
                                          Jeffrey W. Lesovitz (*pro hac vice*)
                                          Email:   jlesovitz@bakerlaw.com
                                          BAKER & HOSTETLER LLP
                                          2929 Arch Street
                                          Cira Centre, 12th Floor
                                          Philadelphia, PA  19104-2891
                                          Telephone:   215-568-3100
                                          Facsimile:    215-568-3439

                                          Michael J. Swope (*pro hac vice*)
                                          Email:   mswope@bakerlaw.com
                                          BAKER & HOSTETLER LLP
                                          999 Third Avenue, Suite 3600
                                          Seattle, WA  98104-4040
                                          Telephone:   206-332-1380
                                          Facsimile:    206-624-7317

                                          Attorneys for Plaintiff
                                          GUEST TEK INTERACTIVE
                                          ENTERTAINMENT LTD.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 17, 2018, I served the foregoing on all parties by electronically filing it through the Court's ECF system.

/s/ Lauren M. Hilsheimer
Lauren M. Hilsheimer

*Attorney for Plaintiff-Counterdefendant*
*Guest-Tek Interactive Entertainment Ltd.*